IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-559-D

| | |
|---|---|
| FREDRICK DARNELL HALL, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| THE CITY OF RALEIGH NORTH CAROLINA, et al., | ) |
| Defendants. | ) |

On August 20, 2020, Fredrick Darnell Hall ("Hall" or "plaintiff") filed a complaint in Wake County Superior Court against the City of Raleigh, Raleigh Police Chief Cassandra Deck-Brown, Raleigh City Manager Ruffin Hall, and several members of the Raleigh Police Department ("RPD") [D.E. 1-1]. On October 23, 2020, several defendants removed the action to this court under 28 U.S.C. § 1446 [D.E. 1]. On November 29, 2020, several defendants moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.E. 12]. On March 22, 2021, the court permitted Hall to amend his complaint in lieu of dismissing the action, thus rendering moot the motion to dismiss. See [D.E. 24, 45].

On March 26, 2021, Hall filed his amended complaint [D.E. 25]. On April 23, 2021, several defendants answered the amended complaint [D.E. 32–39]. On May 10, 2021, several defendants moved to dismiss Hall's official-capacity and municipal liability claims against them. See [D.E. 40, 41]. On June 10, 2021, Hall responded in opposition. See [D.E. 43]. On June 17, 2021, the defendants replied. See [D.E. 44]. As explained below, the court grants in part the motion to dismiss.

I.

The allegations of Hall's complaint arise out of his arrest by RPD officers on August 17,

2018. See Am. Compl. [D.E. 25] ¶¶ 18–32. Hall "was in his vehicle traveling home from work . . . when his vehicle became inoperable." Id. ¶ 19. Hall made "multiple attempts to restart his inoperable vehicle, which had its windows up and air conditioning off," and his "body temperature became elevated from sitting in the hot car for over 10 to15 minutes . . . . Unbeknownst to [Hall], he began to suffer from multiple medical conditions related to heat exhaustion and may have suffered from a heat stroke." Id. ¶ 20.

Hall exited his vehicle and began walking, "remov[ing] his shirt, shoes and socks in an effort to cool." Am. Compl. ¶ 20. A local resident offered Hall a glass of cold water and allowed him to sit on her porch to drink the water. Id. ¶¶ 22–23. Hall "felt better" and returned to his vehicle. Id. ¶ 23. Defendant Harris, a RPD officer, "pulled up and exited his car and approached [Hall] and asked him what was wrong. [Hall] informed officer Harris that his vehicle was inoperable." Id. ¶ 25. Officer Harris asked Hall for his driver's license and Hall "politely complied with" the request. Id. ¶ 26. Harris did not respond to Hall's requests for his driver's license or for Harris to "check to see if his car would start." Id. ¶ 27. Hall "walked back to his vehicle, entered the vehicle, started the ignition and began to drive off." Id.

Harris "ran over to [Hall]'s vehicle and hit the stop button in the car in an attempt to shutoff [Hall]'s vehicle while the car was in motion[,]" then "walked away from [Hall]'s vehicle." Am. Compl. ¶ 28. Hall exited his vehicle and approached "Harris and asked him for his license because he wasn't feeling well and wanted to go home." Id. ¶ 29.

> [W]ithout any warning or notification an officer grabbed [Hall's] wrist and as he turned to see who was grabbing his wrist another officer attempted to grab other wrist and then another officer struck him in the back of the head with a metal object causing serious injury. [Hall] asserts that after he was restrained by three officers, he was struck over ten times with a metal baton, his hand was stomped on numerous times by officers, a metal baton was used to asphyxiate [Hall], and he was kicked about the head and neck repeatedly. [Hall] asserts that the said actions were done with malice and malicious intent with wanton and willful disregard for [his] safety and well-being. In video footage [defendant] Officer Henry described [Hall]'s horrific beating as . . . a good fight and . . . the best fight he's been in. In video footage [defendant] Officer Horner says she should have kicked [Hall] in the neck.

2

Case 5:20-cv-00559-D   Document 47   Filed 11/22/21   Page 2 of 8

Id. ¶ 31. Hall alleges that there is a "pattern of excessive force and unconstitutional conduct of RPD officers" and describes eight instances before his own arrest of "excessive use of deadly force" by RPD officers dating back to 1991. Id. ¶¶ 41, 43–50.[1] "The RPD culture fostered by Defendant Deck-Brown openly permits, even sanctions, uses of force in the field far beyond what is necessary." Id. ¶ 40.

Hall contends that the officers' "actions . . . during the interaction and beating . . . violated multiple Raleigh Police Department policies and his constitutional rights." Am. Compl. ¶ 34; see id. ¶ 37. Hall cites RPD policies concerning the use of body worn cameras and mobile video recording devices, linear use of force, and "policies regarding interaction with mentally ill persons[.]" Id. ¶¶ 54–70. Hall also contends that these policies are so unconstitutional or inadequate as to "create[] a substantial risk of harm to the citizens of Raleigh[;]" that the City, Deck-Brown, and Ruffin Hall knew of the deficiencies but "did nothing to remedy . . . them[;]" and provided "woefully inadequate" training to RPD officers which caused the defendants to violate the policies and Hall's constitutional and state law rights. Id. ¶¶ 38–39, 41–42, 53.

Hall asserts nine causes of action. First, pursuant to 42 U.S.C. § 1983, Hall contends that the individual officer defendants used excessive force while arresting him in violation of the Fourth Amendment. See Am. Compl. ¶¶ 73–82. Next, citing Monell v. Department of Social Services, 436 U.S. 658 (1978),[2] Hall's alleges that unconstitutionally deficient policies and practices and failure

---

[1] Hall "cannot point to events after the date of his alleged attack to show that the City knew at the time of his attack of constitutional violations by [RPD] officers, and acted with deliberate indifference by failing to take steps to prevent future violations." Booker v. City of Lynchburg, No. 6:20-CV-00011, 2021 WL 519905, at *4 (W.D. Va. Feb. 11, 2021) (unpublished); see Milligan v. City of Newport News, 743 F.2d 227, 230–31 (4th Cir. 1984); Moody v. City of Newport News, 93 F. Supp. 3d 516, 535 (E.D. Va. 2015).

[2] Although he does not specifically cite Monell in his third cause of action, Hall alleges that "[t]he repeated and sustained failures of these Defendants to properly train and/or supervise officers of the Raleigh Police Department as evidenced by the aforementioned facts, constituted deliberate indifference to and reckless disregard for the rights of Plaintiff and the public" consistent with a

3

to train or supervise the officers caused the "violations of [his] civil and constitutional rights" Id. at ¶¶ 83–99. Finally, Hall asserts common-law claims for failure to train and supervise, negligence and gross negligence, assault and battery, false imprisonment / false arrest, malicious prosecution, and abuse of process. Id. at ¶¶ 89–138.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263,

---

Monell claim. Am. Compl. ¶ 97.

4

268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The moving defendants first seek dismissal of Hall's official-capacity and common-law claims against them as redundant of his claims against the City of Raleigh. See Mem. Supp. Mot. Dismiss [D.E. 41] 5. Hall does not object to the dismissal of these claims. See Resp. Opp'n Mot. Dismiss [D.E. 43] 4–5. Accordingly, the court grants the motion to dismiss, and dismisses defendants Deck-Brown and Ruffin Hall.

Counts two and three of the amended complaint allege Monell claims against the City of Raleigh based on "customs, policies and practices established by" the City. Am. Compl. ¶¶ 83–98. Municipal entities cannot be held liable under section 1983 solely because they employed a tortfeasor. Rather, when a municipal entity is sued—directly or in an official-capacity suit—the plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–405 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). There are four ways in which liability for a policy or custom may arise:

(1) through an express policy, such as a written ordinance or regulation; (2) through

5

the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471 (cleaned up).

A violation results from a municipal entity's policy or custom if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690, 694; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–22 (1988). However, even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff "is able to identify conduct attributable to the municipality." Riddick v. Sch. Bd., 238 F.3d 518, 524 (4th Cir. 2000). Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404 (emphasis omitted); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524. Thus, to avoid imposing respondeat superior liability on municipalities, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19.

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404. Thus, deliberate indifference and causation are separate requirements. See id.

"Although prevailing on the merits of a Monell claim is difficult, simply alleging such a

6

claim is, by definition, easier." Owens, 767 F.3d at 403. Hall has adequately alleged facts which, if true, state a plausible claim for relief. See Daniels v. City of S. Charleston, No. 2:20-CV-00779, 2021 WL 3624696, at *5 (S.D. W. Va. Aug. 16, 2021) (unpublished); Booker, 2021 WL 519905, at *4–6; Moody, 93 F. Supp. 3d at 537–40. Whether these claims will survive a motion for summary judgment is an issue for another day. Cf. Smith v. Atkins, 777 F. Supp. 2d 955, 966–68 (E.D.N.C. 2011) (granting summary judgment to a municipality on a Monell claim).

Finally, the City argues that governmental immunity bars Hall's common law claims against it. Mem. Supp. Mot. Dismiss [D.E. 41] 23–27. Under North Carolina law, "[g]overnmental immunity is that portion of the [s]tate's sovereign immunity which extends to local governments." Wray v. City of Greensboro, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017). Governmental immunity provides that a local governmental entity such as a county or town is immune from liability for the torts of its officers and employees committed while they are performing governmental functions. See Galligan v. Town of Chapel Hill, 276 N.C. 172, 175, 171 S.E.2d 427, 429 (1970); Sellers v. Rodriguez, 149 N.C. App. 619, 623, 561 S.E.2d 336, 339 (2002).

Generally, governmental immunity bars tort lawsuits against the governmental entity absent waiver. See Wray, 370 N.C. at 47, 802 S.E.2d at 898; Meyer v. Walls, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). A county or town may waive governmental immunity by purchasing insurance, but any waiver is limited to the extent of the insurance coverage. See, e.g., N.C. Gen. Stat. §153A-435(a); Evans v. Hous. Auth., 359 N.C. 50, 57, 602 S.E.2d 668, 673 (2004); Satorre v. New Hanover Cnty. Bd. of Comm'rs, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004). If "the insurance policy does not indemnify [the] defendant against the negligent acts alleged in plaintiff's complaint, defendant has not waived its sovereign immunity." Doe v. Jenkins, 144 N.C. App. 131, 135, 547 S.E.2d 124, 127 (2001); see Dawes v. Nash Cnty., 357 N.C. 442, 445–46, 449, 584 S.E.2d 760, 763, 765 (2003); Est. of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs., 204 N.C. App. 338, 341, 694 S.E.2d 405, 408 (2010).

7

The City of Raleigh has not waived governmental immunity. "The City does not participate in a risk pool and has not participated in a risk pool for many years prior to August 2018." Wilson Decl. [D.E. 40-2] ¶ 4; see Tatum Decl. [D.E. 40-3] ¶ 4. Hall relies on the City's excess liability insurance policy as a waiver of governmental immunity. Resp. Opp'n Mot. Dismiss [D.E. 43] 12–13. "However, excess liability insurance coverage over a municipality's self-insured retention amount does not waive governmental immunity." Cox v. Lamm, No. 4:20-CV-52-FL, 2020 WL 5097832, at *4 (E.D.N.C. Aug. 28, 2020) (unpublished) (collecting cases). Thus, the court grants the motion to dismiss, and dismisses count three of the amended complaint to the extent it relies on common law, count five in its entirety, and counts eight and nine against the City.

III.

In sum, the court GRANTS IN PART the motion to dismiss [D.E. 40] and DISMISSES defendants Deck-Brown and Ruffin Hall, along with count three of the amended complaint to the extent it relies on common law, count five in its entirety, and counts eight and nine against the City. The court DENIES AS MOOT plaintiff's motion for a status update [D.E. 46].

SO ORDERED. This 22 day of November, 2021.

JAMES C. DEVER III
United States District Judge